Bodum Intellectual Properties v. Bodum Intellectual Properties v. Bodum Intellectual Properties v. Bodum Intellectual Properties v. Bodum Intellectual Properties v. Bodum Intellectual Properties v. Bodum Intellectual Properties v. Bodum Intellectual Properties v Bodum Pleased as a court, my name is David Donahue with Holland & Knight, and I represent the appellant, Cross Appellees, Meyer. In this first part of the discussion, we're here to talk about the District Court's obviousness decision. It suffers from multiple layers of error, each of which warrants remand and reversal. First, the District Court failed to analyze specific elements of certain of the claims in the 087 and 122 patents. The court generalizes all the claims into… Mr. Donahue, in the red brief on page 29, Bodum claims that you stated to the District Court that, quote, the milk frother in the 087 patent is a direct copy of the Bodum 3 cup. Aren't you accusing Bodum of copying its own prior art? No, Your Honor, and I think that if you look at images of the plungers, so I take you to Joint Appendix 20,502 and 20,509, those are facing pages. Which volume? Volume 1, Your Honor. Those are images of the bottom faceplate of the plunger in the Bodum 3 cup prior art device. And then if you also turn to JA 20,680 towards the end of the first volume, you'll see two images of Bodum's version 1 plunger for its milk frother, the first accused device. And you'll notice when you look at the bottom faceplate, there are some significant differences. First, the Bodum French press is metal and it has the single bolt in the center, whereas the accused milk frother is plastic and it has the four semicircular knobs coming down. If you then, and I apologize for turning you to all the different pages, turn to the 087 patent, which is JA 20,015 and 16 actually, you see images of the milk frother that Mr. Brady claimed in his patent. The figures are the same in the 087 and the 122 patents. And if you look at figure 5, which is a bottom view of the 087 patent milk frother, and then figure 7, which is a side view of the same plunger assembly, you see how similar that looks to the accused device at JA 20,608. So there really is a difference, an important difference, and you see it in the plunger. You contend that the lower court did not analyze all the brand factors. First of all, one of the things you attacked is there to identify the level of skill in the art. Is there really a dispute at the level of skill in the art? There is a dispute, Your Honor. At the initial phase of this case, at trial, the parties agreed to a level of ordinary skill in the art, which was one or two years of educational experience. Bowdoin now argues for, and Meyer has maintained that level of skill in the art, Bowdoin now argues for a greater level of skill in the art, which is either an education, a degree in mechanical engineering or industrial design, along with one to three years of experience, or five or more years of experience. So a higher standard of ordinary skill in the art. We think there's import to that for the reason of, for example, the feet-like protrusions, which is one of the elements that the district court did not address. And it's also the element that I pointed out to you in the plunger images. Those feet-like protrusions are explained in the patent to help to agitate the milk, to help with the frothing. That's something that, as an aerospace engineer, I understand as a vortex generator, something that creates turbulence and would add to frothing and agitation. Someone with a mechanical engineering degree may or may not understand that, but they would certainly be closer than someone with a year or two of industrial design experience. So we think there is import and a difference. Well, if we accept your definition and the party's stipulated definition of skill in the art and proceed with the analysis based on that, wouldn't that be sufficient? Yes, I think that would be sufficient, Your Honor. Okay. And as to the other brain factors, I mean, there's no doubt that the lower court did talk about one and three, correct? Yes, it didn't talk about the secondary considerations. It didn't address the copying. It didn't address the teaching way. Okay, so the copying. Your evidence of copying, though, is simply that you think that what you just told us, that the second one looks more like yours than the original three. It's a little bit more than that, but yes, Your Honor, that is part of it. It's also the sequence of events. Bodum initially sold a milk frother called a lateo. I believe there was one other. The lateo milk frother was shorter in squatter. We don't have any images of the plunger assembly, but you can see in page 24 of our opening brief an image of Bodum's non-electric milk frother before the patent. Bodum then switches to the accused device in about 1999 after Mr. Brady seeks patent protection first in 1996 and after Mr. Brady first shows a commercial embodiment of his device at a trade show. But your argument was that he shifted to the two-to-one ratio, but he already had the two-to-one ratio, didn't he? Not in a milk frother. What they had in the milk frother was the lateo that we show in our brief. Right, but in the coffee press they had a two-to-one ratio. Well, we dispute that also. They didn't quite have a two-to-one ratio, and there's some argument as to what the proper ratio is, whether it's internal dimensions or external dimensions, but they almost had a two-to-one ratio in the French press. There's a couple ways to measure it. One, it's clearly at least two-to-one. The other, it's almost two-to-one. That's correct. You're talking about minuscule differences from a two-to-one. We see it as slightly more than minuscule. For copying, the only thing you're really relying on is the feed-like protrusion. And the change, from our perspective, the two-to-one ratio was not obvious. And so Mr. Brady's invention of his milk frother and then use and sale of the commercial embodiment of that milk frother may have sparked Bodum to do the same and to use a larger, narrower device. Is the 3-cup pretty much the same? The 3-cup pretty much the same as the milk frother? No, Your Honor, it's not. It is similar in proportions. It's a little bit less than two-to-one based upon the way we measure it, but otherwise they look similar. The Bodum 3-cup prior art device lacks the feed-like protrusions, and so it is different in that regard. Yeah, I'm asking about the proportions because it looks exactly the same. It's close, Your Honor. We believe that it's a little bit less. It measures out to about a 1.84 ratio of height to diameter, I believe. But your whole evidence of copying is we showed it at a trade show, and then later they show up with something that I think looks a little more like ours. But you don't have any direct evidence that anyone at Bodum saw at your trade show. It's all circumstantial evidence, Your Honor. And then on top of that, copying is, as you know, it's a factor, but it's a very weak factor. We understand that, Your Honor. Objective, indicial. Okay, so what else does this court fail to consider? Thank you, Your Honor. The district court also, and there are two other elements that it didn't consider, the wire mesh screen and requiring fewer, equal to or fewer than 20 pumps to aerate the milk or the liquid. And then the factual dispute, which we have addressed. So if Your Honors don't have other questions. Well, I'm trying to understand really what your theory is of where the district court went wrong. And do I understand correctly that your position is that if the court had recognized and considered the public response to this device, commercial success and so on, that provides enough weight to try and understand that maybe it wasn't obvious? That's right, Your Honor. In addition to the elements that were missed and the factual disputes regarding the ratio. That's correct. Okay. All right, then let's hear from the other side. Mr. Bennett, you're going to provide your response to the case in chief and then introduce your cross appeal. Right, well, I'll make my initial argument on the appeal hopefully approximately eight minutes into my time. Okay. May it please the court. Odom's position is that the district judge did properly evaluate the gram factors in concluding that the Frother patent was invalid for obviousness. To be sure, the opinion is concise, but in there the court did make the necessary findings in order to appropriately hold the patents invalid. Well, there's a difference between being concise and not considering all the factors that we say are necessary to an ultimate conclusion on obviousness, correct? Well, we believe that he did consider all factors that were material to his decision. So did he consider the objective condition that was proper? The what, Your Honor? The objective condition of non-obviousness that's alleged teaching away and copying. He did not specifically consider those, Your Honor, but we think that neither of those issues are significant enough to interfere with the judge's finding that the patent was obvious. In other words, they don't raise a material question of fact that would interfere with somebody's judgment. You can see that our case law says that where there's proper evidence of non-obviousness, that you have to consider it. Yes, Your Honor, I'm aware of the case law. The extent was error, it was harmless because what they proffered wasn't meaningful? No, Your Honor, I don't think that the mere fact that he didn't consider them, I recognize the court's teaching on that subject, but in this case I think that the issues are so insignificant that they would not raise the material issue of fact, and that this court, since it has power to review a summary judgment, they know well, could look to evidence in the record and make a proper decision on those facts, which I'd be glad to bring to your attention if you'd like. You say they're insignificant in your view, but we don't know if the trial judge would have deemed them insignificant. You're saying because he didn't talk about them, he must have considered them insignificant? Yes, Your Honor, I think that there's evidence in the record which the judge could have considered, and if he had found them significant, I presume that he would have mentioned them in his opinion. For example, the teaching away argument. There is in the record a warning that Votam had put in with its three cup and other coffee makers. About glass scratching? Right, about glass scratching, and that you should never use a normal coffee maker for frothing milk, as you will scratch the glass and the coffee maker is not safe for using anymore. But that statement, implicit in that statement is the fact that the frother can be used, or the three cup can be used for frothing, otherwise there would be no reason to provide the warning. As I understood it, what it's saying is if you scratch the glass and you pour hot coffee into it, or boiling water, a thing can crack because of the scratches. But if you exclusively use it for frothing milk, you're fine and dandy. That's exactly the importance of the warning, Your Honor, that's the way I read it as well. So I think implicit in that warning is the fact that the Votam three cup could very well be used as a milk frother, otherwise there would be no reason to give the warning. I don't think that's a teaching away under the patent one. What about the copying argument as it relates to the strong, the four feet? The four feet. Well, Your Honor, as far as the copying evidence goes, there is no evidence in the record that Mr. Votam or anybody at Votam saw the Brady embodiment of the device, the Meyer frother, before selling their own three cup frother. I mean, their own skinny frother. There's no question, is there, that it was in a trade show and was seen and observed? Aren't there presumptions that are logic? Well, there's no evidence. And then it turns out that something that looks identical is produced, that there was some connection. Well, the evidence, Your Honor, in the record is only that Mr. Brady displayed the frother at the 1996 trade show in San Francisco. There's no evidence that anybody from Votam attended that trade show, much less saw the frother. Where did it come from? All of a sudden, all of a sudden, the design changes and matches the one that was on display. And your one and two are that there are logical interventions, are there not, in such a good condition? Well, the evidence in the record, Your Honor, is that a customer requested a skinnier type frother from Votam, and that Votam did not design the product itself, but went to third-party manufacturers and bought off-the-shelf glass and plunger elements that were available in the market. Maybe that doesn't even have to be considered, because the rules of prior art is that if the prior art is out there, it doesn't matter if you knew about it or not. I think in terms of copying, Your Honor, it would make a difference, and the fact that the prior art's out there is not enough to show that it was a copy. I mean, the only evidence of copying is that they look alike. It's just as logical an explanation, I think, Mr. Votam's explanation, that a customer asked for a taller, skinnier frother, and he went to manufacturers, in this case he said China, and bought the items that were sold to them from those manufacturers. So there's not a hint in the record, in the evidence in the record, except for the fact that they look alike, which I think this Court has held is not sufficient to make a finding of copying significant enough to be a secondary factor in connection with an obvious determination. There's no evidence that Votam had ever seen a thing prior to coming out with its own version of the tall, skinny frother, and as I mentioned, the parts were purchased off the shelf, so to speak, from a manufacturer. What's your response to your friend's argument that you're in fact now arguing for a higher level of skill in the art than you stipulated to at the first trial? Your Honor, I don't think that's significant to this case. The difference between the two purported levels is so minor that I don't think it would be determinative of the outcome of the case and whether the district judge considered the matter under either definition. Both of the definitions of the ordinary skill relate to some level of education, either in design or an engineer, and for one to three years, or I think it was one year in the case of the agreed jury instruction, and three years of experience in the case of Mr. Anders' report. But we don't think that those differences are material and that the plaintiff has not shown that they would affect the obviousness determination. There's no way that you say, well, they're different, but we don't believe that they have shown how they would affect the obviousness determination. If anything, it seems a little odd because the plaintiff's argument for a lesser level of skill in the art, and you would think if you had to have a higher level, it might be less obvious, but a lesser level would seem to support the other side. It would make it more obvious, yeah. I think you could have it reversed, frankly. So if the court doesn't have any other questions on that subject, I'd like to turn to our appeal. Okay, proceed. With the court's permission. I've used up a little over eight minutes here. So it's Fodum's position that the district court abused its discretion in finding that this case was not exceptional in light of the totality of the circumstances of the case and the Supreme Court's decision in octane fitness, as well as this court's prior decision in the Bislow case, recent decision in the Bislow case. As I understand your motion, and it was kind of odd because you had two grounds. One is the ineffable conduct, which we'll get to in a minute, but the other ground you said was litigation misconduct. Yes, Your Honor. Continually depressed to keep the Fodum three cups out of the case. Yes. But you didn't really argue that given the fact that the patent was obvious that it wasn't meritorious, that it wasn't a meritorious case. You simply just argued that they engaged in litigation misconduct because they tried to keep critical prior out, right? That is our focus, Your Honor. Okay. Although we do address in the brief that we don't think that the case had substantive strength. We discussed that in our brief, but in the motion to the court, that wasn't the focus. You said we have two reasons. Right. And the first had to do with what you characterized as litigation strategy, improper litigation strategy. So the problem is clearly we disagreed with the trial court's ruling in the first appeal. But what you're asking us to do is to say that their motions were frivolous and their continued request that the court keep with its same ruling for frivolous. And essentially that the court's own ruling were so wrong that that trial judge couldn't see that it was all frivolous. You see what I'm saying? Yes, Your Honor. The trial judge fought their argument. But I think that the facts of this case support our arguments in that regard. Is transparently false testimony by a party in itself litigation misconduct sufficient to— I think it is, Your Honor. You said transparently false testimony? Yes, by a party where they testify about lack of knowledge of something and it's clear they're wrong. Well, I think if the lawyer was complicit in presenting that testimony, which I guess you'd have to assume, I think it would be litigation misconduct in itself. I mean, I suppose there's always the possibility that a witness says something the lawyer didn't expect. But putting that aside, we don't really have a testimony problem here as much as—our position is that the—two things. What concerns me is Mr. Brady. Brady, right? Brady was the inventor. His testimony that he had been a salesman for Bowdoin, but he wasn't aware of the three-cup in its specifics. He gave that testimony in deposition, Your Honor. But our problem isn't so much with the testimony as with the actions of counsel in the case because, you know, we had a very experienced district court judge here. But as he said himself during one of the oral arguments on these issues, he was not an expert in patent law. We had lawyers who were clear experts in patent law. Who gave that testimony in deposition? I'm sorry? Who gave that testimony in deposition? Mr. Brady. Mr. Brady gave that testimony in deposition. You know, he was obviously aware of the three-cup because he sold it for 10 years. We have all kinds of documentary evidence in the record that shows that he worked with Mr. Bowdoin to promote that product with William Sonoma. I misheard you. That's why I asked. Yeah, okay. So—but getting back to the lawyer's conduct, our position is—encompasses a couple things. Number one, that the motions in limine were so far out of bounds that they were not well-founded. They were frivolous as a matter of fact and law. And that started the progression of keeping Bowdoin's prior art and the three-cup out of evidence. The other thing, there was a motion in limine which was granted challenging—or trying to bar our expert Robert Andrews' testimony because he did not issue a proper report. As this court found— But you understand— He did issue a proper report. Do you understand the awkward position you're putting us in? In other words, you're asking us to say not only that the trial court was wrong and it's ruined, which we've already said. Right. But that the trial court didn't—wasn't able to see through those motions to see that they were not just wrong, but they were patently perfect. Right. And that's the first part, Your Honor. But there's a second step playing off of those motions, which was probably even more significant in terms of why we believe there was litigation misconduct in this case. And the second step was at the end of all those motions, the Bowdoin three-cup—the testimony about the Bowdoin three-cup and the catalog pages that would show that the product was in existence prior to the critical date of the patent were admissible. And so we were allowed to discuss the Bowdoin three-cup in our opening statement. But then just before—right at the conclusion of the plaintiff's case, counsel argued to the district judge successfully that the Bowdoin three-cup itself should not be admitted because it was—it would be an end run around the court's prior rulings. But that was a misrepresentation because the prior rulings were that the three-cup was going to be admissible. The trial court agreed. But the prior testimony by Mr. Bowdoin about the three-cup wouldn't allow the catalog pages into evidence. Let's talk about your inequitable conduct argument. I'm sorry? Let's turn to your inequitable conduct argument. Inequitable conduct? Yes, Your Honor. All right. So you have substantial evidence that Mr. Brady was involved in selling the Bowdoin three-cup, right? Yes. But do you have any evidence that he was aware that the Bowdoin three-cup had a two-to-one ratio other than the fact that it was part of a product group that he was selling? We don't have direct evidence of that, Your Honor. But his familiarity with the three-cup would certainly lead to the conclusion that he had knowledge of that ratio. And the three-cup also was, I mean, that element of the three-cup was one of the elements that was submitted by Mr. Brady as part of the novelty not disclosed in prior art that led to his invention. And so I think it's implicit that he would be charged with the knowledge of the two-to-one ratio because he has to know that. That's an argument that's made to us here, that the two-to-one ratio was not added during prosecution. It was always in the collection and that it was just moved from one section to another. Right, but I mean the… Do you agree with that characterization of a prosecution history? No, I don't think so, Your Honor. I don't think I agree with that. Did you look at that issue? And that's what he's arguing now. I don't know if he argued it below, but he's arguing that to us today. I don't think so, Your Honor. It was my understanding that the two-to-one, the device that contained the two-to-one ratio was something new that was brought to the examiner's attention after he had initially denied the claims in the patent. It was part of the, you know, there was a series of things in the novelty, which was the two-to-one ratio, the plunger assembly and so forth, which of course we say was all borrowed from the three-cup. Okay. Thank you, Mr. Bennett.  Mr. Donohue? I'd like to start where we left off, because you say that the two-to-one ratio was always in the claims and it wasn't added, and that's not how I read the prosecution history. I see two amendments, one of which puts it in and the other of which moves it up, but I don't see that it was in the original application. So I want to know why you would say that. Your Honor, I'm looking for, I apologize, I'm looking for the initial claim set in the prosecution history, where I believe it always was. It was at the bottom of a claim. It wasn't necessarily in the first claim, but it was always in the claim set, and then ultimately it was moved up. Was it always in the specification or manifestable, observable from the drawings? Well, there's case law, Your Honor, I believe that you can't measure... It wasn't objected to as new matter, was it? No, it was not. It was not. And it was always in at least a claim. That's not to say that it was in every claim. All right, show me where it was originally in any claim. Because I see two separate amendments. Your Honor, with apologies, could you tell me where you're looking? Okay, so there's, one of the amendments is at 30086, and that's where it appears to have been moved up. But then if you go to 30114, and you look at the examiner's discussion of the interview, it says, Discuss the aspect of the height-diameter ratio of the instant claim to view of the prior art. Applicant will incorporate such limitation in the step of the process in a further amendment. So it appears that your statement that it was just moved up in the same claim is not accurate, and that, in fact, it was actually in response to the rejection that it was put into the claim. Well, it was put into, it was added to certain of the claims. But it was in at least one of the claims, Your Honor. Your Honor, I apologize, I'm not finding it. Okay. Well, let me ask you this. In the red brief on 26, you say that, I'm quoting, The district court made no mistake in finding, internal quote, There is no specific evidence that the inventor was aware of the Bowdoin three cup as a prior art reference, close quote. But on the prior page, you say, Meyer acknowledged before the district court that Brady had a general knowledge of the Bowdoin three cup French press. And if he had a general knowledge of it, how is it that knowledge of the prior art? How is it the knowledge of? How is it his general knowledge of the Bowdoin three cup French press is not knowledge of prior art? Well, it's, and maybe we weren't as clear as we could have been, but we were trying to make a distinction between materiality and knowledge. We're not saying that Mr. Brady was unaware. What we're saying is there's no evidence that Mr. Brady was aware that it was material, particularly as any different than any of the other multiple French presses that were put before the examiner in both the 087 and the 122. But isn't it telling that he put a lot of French presses before the examiner, but none of which have the two to one ratio? And yet one of the very French presses we sold had at least, as you say, almost exactly the two to one ratio? Not necessarily, Your Honor. It's a question of what Mr. Brady knew at the time. And unfortunately, there is very little evidence in the record as to what that was beyond our acknowledgement that Mr. Brady was at some level aware of the Bowdoin three cup French press. Well, he sold them. We're agreeing. Yes, Your Honor. We're agreeing with that. Whether or not he understood it was material, I think, is a separate issue. Were the ones he put in front of the examiner ones he sold? There's no evidence as to whether or not they were. It's my understanding that he sold other products, so they may have been, but I do not know. And I don't believe the record tells us that. If I may, I'd like to turn to the press appeal. Thank you, Your Honor. This case is not exceptional. What was done at the trial court was a series of motions trying to exclude evidence that Meijer believed were being improperly used based upon what Meijer believed to be an insufficient expert report or evidence that had not properly been identified to the court and to Meijer. While we acknowledge that this court disagreed and we have not challenged any of those rulings since, it's hardly exceptional to follow a trial court's rulings or to seek to exclude an expert report that a party believes to be deficient. Well, every single motion you filed was aimed at keeping out the three cups, correct? No, not necessarily. The initial motion was aimed at excluding art that hadn't been used, either hadn't been provided in the interrogatory responses. Right, but by the time you got up here, you confessed to us that it had been provided in the interrogatory responses. That you told the judge it hadn't been, the judge fought that, but when you got here, you conceded that it had been provided in the interrogatory responses. Some of it had been, that's right, Your Honor. And then the next motion was to limit, well, I guess it was a combined motion, but limiting the prior art to that used by Mr. Anders in his report, which is two prior art devices, the Ghedini patent and the Bodum Three Cup French Press, as well as a drawing. But then if you actually read the report, you see that he actually references the Meyer Bodum Three Cup. He focuses on those two for purposes of that one particular opinion, but the report itself contained reference to those other prior arts. It did, and it did certainly in the sense that he had considered various other prior art, but the only prior art that he had charted and provided analysis of. Your argument to the trial court was you were surprised by this reference to the Bodum Three Cup because he's never mentioned it, and that wasn't the case, right? That is not the case. He had mentioned the Bodum Three Cup. You convinced the trial court to do a lot of things, partially because you were mischaracterizing what you knew and what you'd been told, right? I don't believe that's the case. We intended to be careful and direct with the trial court, so it's our belief that we put forward truthful statements to the trial court. That just turned out to be untrue. Perhaps incorrect. Certainly not intentionally untrue, Your Honor. We have a couple of minutes if there's anything else you need to tell us. Thank you, Your Honor. The only other point I think that may be worth addressing, unless you have more questions, we talked about materiality. Like the lack of evidence with materiality, there's no evidence that Mr. Brady intentionally withheld the Bodum Three Cup as a reference. In fact, to the contrary, he provided a number of French presses, and so it is at least as reasonable an inference that Mr. Brady simply forgot, perhaps thinking of the Lataio milk frothers that he may have also sold. The record doesn't say, the Lataio being the older version of the Bodum Three Cup, or the Bodum milk frother, or that he believed it to be cumulative and therefore not necessary. Okay. Thank you, Mr. Donahue. Mr. Bennett. Your Honors. So on the point about the inequitable conduct that Your Honor had just raised at the end there, it's our position that while there is no direct evidence of Mr. Brady's knowledge at the time, and which is not surprising, I mean, your opinion in their sense recognized that rarely will there be direct evidence, and particularly in this case where the critical date was in 1995 and the infringement case wasn't brought until 2006. I can tell you we sure looked for direct evidence, but we didn't find any. There was no evidence of any documents going back to that period of time. But recognizing that, I think this Court in their sense reached the sensible conclusion that inequitable conduct could be shown if the most reasonable inference that could be drawn from the evidence would be that the inventor intentionally did not disclose the prior art. What's a reasonable inference and what's not a reasonable inference? Isn't that something that we would defer to the lower court's determination on? Yes, Your Honor, but I think in this case the district court abused its discretion on that issue because each of the factual predicates that the district court listed is manifestly incorrect. And there were three factual predicates for his decision on inequitable conduct. The first was that there was no specific evidence that the inventor was aware of the Bodum 3 cup as prior art reference at the time he obtained the two patents in suit. Well, the evidence demonstrates that he was intimately aware of the Bodum 3 cup at that time. He'd sold it for 10 years as a manufacturer's representative of Bodum. The second finding of the district factual finding was that while he may have been aware that such a coffee maker existed, the fact that it was primarily a device to make coffee rather than one to froth milk could create a reasonable explanation for not advising the patent examiner. I think we agree with you that the trial court was too dismissive with respect to the inequitable conduct claim and at minimum should have had an evidentiary hearing or something to assess the inequitable conduct claim. That's still only one factor, right? We don't have any case law and certainly after Octane couldn't have case law that says that one factor in and of itself is always sufficient for p-shifting, right? No, Your Honor. So we'd have to send it back and the trial court would still have to assess the totality of the circumstances so at most you would get another reading. I think there's facts in the record, Your Honor, that would support the inequitable... the fact that the most reasonable inference would be... But even if we agreed with that, would the court still be allowed to weigh everything else in assessing whether or not this case is exceptional? Well, the courts weighed it once and came up with the three incorrect reasons, Your Honor, so I think that this court... I mean, yes, that is a possible sensible outcome for sure, but I guess I could see this court making the decision itself based on the evidence that's in the record. Would that be consistent with Highmark? I would think so, Your Honor. We're supposed to review for abuse of discretion. Well, the district court abuses discretion. The evidence clearly reveals... we would say the evidence clearly reveals that this inference is the most likely inference to be drawn from the facts in the case and that therefore it would be appropriate. The last thing I'd like to say, Your Honor, is that... going back to the point of the litigation misconduct, at page 29 of our brief, we cite three... three statements from counsel's... Byers' counsel's argument in trying to exclude the three-cup successfully in which they... which counsel said... to the prior district judge and said that we were trying to circumvent the court's ruling... previous rulings, which was not true. We were trying to enforce the court's previous rulings by relying upon documents that this court has already excluded. And the documents they were talking about were the catalog pages that were going to be the corroboration for the existence of the three-cup during the relevant period. And that was said three times. Second one, the only way they can corroborate is by using prior art the court has excluded. They're back-ending the prior art in this case. Well, the court hadn't excluded the prior art at that time. The court had said that the three-cup was going to be admissible and permitted us to use it during the... our opening statement. But then the judge cut the... our legs out from under us because he ruled to the contrary, but I... you know, it's our position that it was these completely erroneous statements, misleading statements by the... by the mayor counsel that led... with approximate cause, if you will, of that decision. And that decision caused the trial to be a complete waste of time. You need to wrap it up. We're over time. Thank you, Your Honor. Okay. Thank you. Thank you both. The case is taken into submission. Thank you.